UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL GARDNER,

    Plaintiff,

  v.                                    Case No. 09-C-705

APPLETON BASEBALL CLUB, INC. d/b/a
WISCONSIN TIMBER RATTLERS,

    Defendant.

---

**DECISION AND ORDER**

---

Plaintiff Michael Gardner filed this lawsuit, for which he seeks class certification, alleging violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g). He alleges that the Defendant, which operates the Wisconsin Timber Rattlers (a Class A affiliate of the Milwaukee Brewers), violated FACTA when it printed Gardner a receipt for a transaction that contained the expiration date of his credit card. Gardner does not allege actual injury but seeks statutory damages of $100 to $1,000 per violation for himself and his purported class. The Defendant has now moved to dismiss the complaint on the grounds that the complaint fails to allege a willful violation of the statute. (If there is no willful violation, there is no basis for statutory damages.) For the reasons given below, the motion will be granted.

Section 1681n of FACTA imposes civil liability upon any person who "willfully fails to comply" with any requirement of the Act. 15 U.S.C. § 1681n(a). "Willfulness" under FACTA includes both knowing and reckless conduct. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 56-57 (2007). In *Safeco* the Court concluded that Congress intended the common law understanding of

reckless conduct: "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). "Thus, a company subject to [FACTA] does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

The Timber Rattlers move to dismiss on the grounds that the complaint fails to adequately create an inference that the Defendant acted willfully when it failed to comply with FACTA. And even if willfulness is properly pled in the complaint, they argue that a willful violation of FACTA cannot be demonstrated because the statute itself is so vague as to "negate the possibility of a willful violation simply because the merchant prints the expiration date." (Def. Br. at 8.) I will begin and end with their first argument, which is premised in part on their assertion that "notice pleading is dead." (Def. Br. at 4.)

To place the Timber Rattler's argument in context, however, it is first necessary to review the specific language of the FACTA provision at issue and the express findings Congress made in enacting The Credit and Debit Card Receipt Clarification Act of 2007 ("the Clarification Act"), Pub. L. No. 110-241, 122 Stat. 1565 (2008) (codified at 15 U.S.C. § 1681n(d)), which it passed in an effort to clarify the provision. The provision at issue states:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

2

15 U.S.C. § 1681c(g)(1). This provision was intended to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud. Pub. L. 110-241, § 2(a)(1); *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). As Plaintiff alleges, FACTA was enacted on December 3, 2003, but gave merchants who accept credit cards and/or debit cards one or three years to comply, depending on when the cash register or other machine or device that electronically prints the receipt was first put into use. 15 U.S.C. § 1681c(g)(3). (Compl. ¶¶ 7, 29.)

Despite the delay in its effective date, many merchants were not in full compliance when the provision went into effect. Like the Timber Rattlers in this case, many merchants attempted to comply by truncating the credit card account numbers on their receipts, but failed to also remove the expiration date of the cards. In passing the Clarification Act several years later, Congress expressly found that "[m]any merchants understood that [§ 1681c(g)(1)'s] requirement would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of the law." P.L. 110-241, § 2(a)(3).

The problem with the language of the provision is apparent. While the intended meaning is apparently that the merchant is to print either the last five numbers of the account or the expiration date of the credit card on the receipt, but not both, it could be understood as giving merchants a choice between truncating the account number to the last five numbers of the account or listing only the expiration date. It all depends on what the word "or" means. Under the latter reading, merchants who truncate the account number would be in compliance, even if the card's expiration date was shown on the receipt.

3

The later reading was not unreasonable, since it would also accomplish the intended purpose of the provision. "Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud. *Id.* §2(a)(6). And as Congress also found, the publicity surrounding the passage of the original provision added to the confusion. *Id.* § 2(a)(3). Indeed, as the press accounts quoted by the Timber Rattlers in its brief make clear, "the federal government added to the confusion over how the statute is to be interpreted by emphasizing only the truncation of the credit-card number, wholly omitting any reference to any requirement that the statute also requires redaction of the expiration date." (Br. at 9.)

As a result of this confusion, Congress found shortly after the effective date of FACTA that merchants were being bombarded with "abusive lawsuits" that did nothing to protect consumers but only resulted "in increased costs to businesses and potentially increased costs to consumers." Pub. L. 110-241, § 2(b). More specifically, and in addition to the foregoing findings, Congress found:

1. "Almost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the [FCRA] even where the account number was properly truncated. *Id.* § 2(a)(4).

2. " None of these lawsuits contained an allegation of harm to any consumer's identity. *Id.* § 2(a)(5).

3. " Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit. *Id.* § 2(a)(7).

Based upon these findings, Congress passed the Clarification Act "to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting

4

abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." *Id.* § 2(b). Unfortunately, the Clarification Act did nothing to clarify the confusing language Congress used in the original enactment. The language in 15 U.S.C. § 1681c(g)(1) remains the same. Instead, Congress added a provision entitled "Clarification of willful compliance." 15 U.S.C. § 1681n(d). The new provision simply exempted from liability those merchants who properly truncated the account numbers but printed credit card expiration dates on customer receipts prior to the effective date of the Clarification Act:

> For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c(g) of this title for such receipt shall not be in willful noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt.

15 U.S.C. § 1681n(d).

It is with this background that I address the Timber Rattler's argument that Plaintiff's complaint is legally insufficient.

Two recent Supreme Court cases have emphasized that it is no longer enough to make bald allegations in a complaint because Rule 8(a)(2) requires a statement of the claim "showing" that the plaintiff is entitled to relief. In *Ashcroft v. Iqbal,* the Court found that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible.'" 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Rule 8, in other words, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1943.

The Timber Rattlers argue that the complaint flunks these pleading standards because it offers no more than a conclusory assertion that the Defendant violated FACTA willfully. In other

5

words, there is no detail or factual basis in the complaint upon which one could reasonably infer that the violation was willful, other than the fact that the violation occurred. Plaintiff disagrees. The complaint, he notes, contains the following allegations. First, FACTA was enacted in 2003 and contained a three-year grace period to allow merchants to begin compliance. (Compl., ¶¶ 7, 29.) In 2008, Congress enacted the Credit and Debit Card Receipt Clarification Act, which made corrections to the definition of willfulness and extended the grace period until June 3, 2008. Second, the FTC has issued guidance to companies to help them comply with the statute. (Compl., ¶ 32.) Finally, the complaint alleges that "[m]ost of defendant's business peers and competitors readily brought their processes into compliance with FACTA by programming their credit card machines and devices to comply with the truncation requirement." (Compl., ¶ 33.) Based on these facts, Plaintiff argues, it would be highly plausible to infer that any violation of FACTA would have been a willful one.

Plaintiff further notes that numerous district courts have found the same or similar allegations to be in compliance with *Twombly*. To take just one example, the district court in Kansas concluded as follows:

> Defendants argue that plaintiffs have not alleged willful violations of FACTA because mere knowledge of the statute and other retailers' compliance with its terms are not sufficient to show knowing or reckless noncompliance. This argument is unpersuasive. The complaint alleges that defendants recognized their statutory duty to limit the information which appeared on customer receipts, but intentionally ignored that duty and refused to take steps to comply with FACTA regulations. The complaint suggests that defendants' noncompliance was the result of more than a mere careless reading of FACTA. When taken as true, plaintiffs' allegations state a plausible claim for willful violations of FACTA.

*In re TJX Companies, Inc.,* 2008 WL 2020375, *2 (D. Kan. 2008).

6

Plaintiff has cited numerous other cases reaching the same result, and the Timber Rattlers have only cited one case reaching the opposite conclusion. *See Rosenthal v. Longchamp Coral Gables LLC,* 603 F. Supp.2d 1359, 1362 (S. D. Fla. 2009) ("That the Defendant acted more than 'negligen[tly] but less than knowledge of the law's requirements' is not established by the mere fact that FACTA's requirements were well-publicized in the media and contained in Defendant's credit card agreements.") (quoting *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008)). Although the majority of cases cited ostensibly supports the Plaintiffs' argument, for the following reasons I respectfully decline to follow those cases. I do so for several reasons.

First, none of the cases Plaintiff cites addresses complaints that are as barebones as the one at issue here. Each complaint that survived a motion to dismiss contained additional allegations tending to show that the defendant specifically knew about the requirements of FACTA. *See, e.g., Troy v. Home Run Inn, Inc.,* 2008 WL 1766526, *2 (N.D. Ill. 2008) (complaint alleged that "credit card issuers like VISA, MasterCard, Discover, and American Express informed Home Run Inn about FACTA's requirements and required compliance via contract.") Here, by contrast, there is no reason to infer that a minor league baseball team would have been apprised of the statute's requirements or would otherwise have had reason to know about them. The Timber Rattlers are not Wal-Mart, the defendant in another case Plaintiff cites. *Harris v. Wal-Mart Stores, Inc.,* 2007 WL 3046162 (N.D. Ill. 2007).

Second, the legion of cases cited by Plaintiffs pre-dates the Supreme Court's decision in *Iqbal*. Although *Iqbal* was largely an echo of the 2007 *Twombly* decision, it underscores the Supreme Court's seriousness about changing the requirements from conclusory notice pleading to a plausibility standard, and it clarified that the new requirements applied to all cases, not merely

7

antitrust cases. While the rationale of the cases cited by Plaintiff suggests that many of them would reach the same result even if they had the benefit of *Iqbal,* in my view *Iqbal* compels a different result. As the Seventh Circuit has concluded:

> *Iqbal* . . . clarified that *Twombly*'s plausibility requirement applies across the board, not just to antitrust cases. In addition, *Iqbal* gave further guidance to lower courts in evaluating complaints. It noted that a court need not accept as true "legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." We understand the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that they must do more. These are the plaintiffs who have not provided the "showing" required by Rule 8.

*Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).

Here, the complaint merely "parrots" the statutory language without providing any specific facts. Although Plaintiff protests otherwise, the "facts" he cites are merely general truisms rather than specific allegations touching on the circumstances of this case. For example, the fact that most other businesses may have complied with FACTA raises no *specific* inference about willfulness on the part of the Timber Rattlers. In essence, Plaintiff is suggesting that because most businesses know the law and follow it, the Defendant's failure to do so must have been willful. But this is an allegation that could be leveled (and apparently is) in *every* FACTA case. Any time a company violates the law, a plaintiff could point out that most companies do *not* violate the law, and on this shaky hook a plaintiff could hang a claim of willfulness. These kinds of arguments are not particularized facts about the defendant's intent, but inferences of general applicability drawn from the Plaintiff's observations about life. The "fact" that other businesses comply with the law is an assertion that could be leveled at *any* FACTA defendant, and thus in substance the complaint merely

8

alleges that the Defendant violated the statute, and the violation itself is deemed sufficient evidence of willfulness. Under *Iqbal* and *Twombly*, there has to be something more.

The same is true for the other "facts" cited in the complaint. The complaint alleges that the FTC issued guidance on compliance with FACTA, and from this we are asked to infer that the Defendant must have known about that guidance and disregarded it. But once again this is a fact about the general state of affairs in the country rather than a fact particular to the Defendant. As above, it is an allegation that could be leveled against *any* FACTA defendant. The existence of the law and/or guidance on the law is not enough to create an inference that the law was knowingly disregarded, absent some allegation that the guidance was actually sent to the Defendant or so well-publicized that everyone knew about it. The complaint further alleges that the grace period ended on June 3, 2008 and that the Defendant printed the credit card receipt after that date. This merely establishes that a violation occurred, however, without saying anything about willfulness. By definition, a statute can only be violated *after* the grace period ended, and thus it follows from Plaintiff's argument that *every* violation of the statute would be willful simply because it *was* a violation. This once again conflates the occurrence of the act with the mental state of the actor and begs the question of willfulness. To say that a violation occurred after the grace period ended is to state only that a violation occurred, period. It is not supportive of an inference of intent or recklessness.

Ultimately, these "facts" do not suffice because they are not particularized at all – they are general facts about the law itself and about other, unnamed companies' response to the law. These same facts could be alleged against *any* alleged FACTA violator, and as such they are essentially boilerplate. The essence of the complaint is: the Defendant violated the Act, some other businesses

9

did not violate the act, therefore the Defendant's violation was willful. No doubt Plaintiff's counsel could open the complaint in his word processor, delete the Appleton Baseball Club, and substitute any other defendant in its place without disturbing much of the rest of the complaint at all. *Twombly* and *Iqbal* teach that such cut-and-paste jobs are not a substitute for real facts that plausibly "show," under Rule 8, that the Plaintiff is entitled to relief. In other words, because there is nothing in the complaint to distinguish the willfulness of *this* Defendant from any other imaginable defendant, the complaint fails to satisfy Rule 8.

Finally, it is worth noting that the result is not merely the product of overly technical pleading rules. As should be obvious from the foregoing discussion of the legislation at issue, the bald inferences Plaintiff relies upon are not particularly persuasive ones at all. It is just as reasonable to infer that a company could print an expiration date on a credit card receipt negligently rather than willfully. Indeed, it is far more likely that the violation was merely negligent, if even that. The fact that the account number was properly truncated shows that the Defendant attempted to comply with FACTA, and given the fact that no additional protection of the consumer is achieved by deleting the expiration date, it can hardly be said that its action "entail[ed] an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 68 (internal quotes omitted). After all, what did a minor league baseball team stand to gain by printing a few extra digits on a receipt for a hot dog and subjecting itself to potential liability of $100 to $1,000 for each transaction? Although willfulness includes recklessness, there is no suggestion of a motive in the complaint at all. Was the team trying to save money by not complying? Did compliance require new equipment or expensive training? Did the owners have a cavalier attitude

10

towards credit card privacy or toward regulatory compliance in general? Here there is simply no reason to infer willfulness merely because the violation occurred.

Moreover, the flurry of FACTA cases cited in the briefs, as well as the express findings Congress made in enacting the Correction Act, suggests that violation of the statute is actually widespread. This undercuts the Plaintiff's suggestion that compliance with the statute is so common that noncompliance is synonymous with *willful* noncompliance. Are all of these FACTA defendants willful actors bent on violating credit card users' privacy rights and subjecting themselves to liability for statutory damages, or does the spate of cases instead suggest that FACTA's requirements may not have been so obvious to most businesses? This is normally not something that would be considered in ruling on a motion to dismiss, but the inference Plaintiff asks the court to draw – that everyone knew about FACTA's requirements – seems at least partially undermined by the sheer number of cases he has cited.

But these are side issues I raise merely to explain why the requirements of *Iqbal* and *Twombly* are sensible ones when applied in the context of this case. In short, the inference of willfulness in this case is a facially *implausible* one, and to create plausibility Plaintiffs need to plead more than conclusions and inferences based on generalities. Without any plausible reason to infer willfulness, I conclude the complaint should be dismissed pursuant to Fed. R. Civ. P. 8(a)(2).

For the reasons given above, the Defendant's motion to dismiss is **GRANTED**, and the complaint is **DISMISSED** without prejudice.

Dated this   31st   day of March, 2010.

  s/ William C. Griesbach  
William C. Griesbach  
United States District Judge

11